IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SAMUEL WISDOM RHODEN,
   Plaintiff,

vs.          Case No.: 3:14cv514/LAC/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.  PROCEDURAL HISTORY

   On March 28, 2011, Plaintiff filed an application for DIB, and he alleged therein disability beginning February 5, 2009 (tr. 45).[1]  His application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing

_____

  [1] All references to "tr." refer to the transcript of Social Security Administration record filed on November 25, 2014 (doc. 6).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

was held on January 28, 2013, at which Plaintiff and a vocational expert ("VE") testified (*see* tr. 58–93).  On April 25, 2013, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 45–53).  On September 20, 2014, the Appeals Council ("AC") denied Plaintiff's request for review (tr. 1).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In his April 25, 2013, decision, the ALJ made the following relevant findings (*see* tr. 45–53):

1)     Plaintiff last met the insured status requirement of the Act on December 31, 2011.[2]

2)     Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 5, 2009, through his date last insured of December 31, 2011.

3)     Through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, decreased vision, diabetes mellitus, obesity, and hypertension.  But Plaintiff had no impairment or combination of impairments that met or medially equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)     Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except he was precluded from climbing ladders, ropes or scaffolds; was limited to the occasional climbing of stairs or ramps and occasional crouching, kneeling or crawling; was precluded from working at unprotected heights or around unguarded machinery, performing work that required good depth perception or fine vision, and working at a job that required driving any motorized equipment; and he required work that permitted a sit or stand option with no more than four hours in either position.

5)     Through the date last insured, Plaintiff could not perform his past relevant work as a truck driver, as that work was performed at a medium level of exertion (*see* tr. 89) and therefore exceeds the limits of Plaintiff's RFC.

6)     Plaintiff was born on January 9, 1964, and thus was forty-seven years old—which is defined as a "younger individual" aged between eighteen and forty-nine—on the date last insured.

7)     Plaintiff has a limited education and is able to communicate in English.

---

[2] Thus, under usual circumstances, the time frame relevant for purposes of the instant appeal would be February 5, 2009 (alleged onset date) through December 31, 2011 (date last insured).  However, Plaintiff had a previous claim for benefits that was denied by an ALJ on February 23, 2011; he appealed the denial to the AC, and the AC affirmed the ALJ's decision (tr. 45).  Plaintiff did not seek review of the prior decision in federal court (*id.*).  Accordingly, the prior decision is administratively final as to Plaintiff's disability as of February 23, 2011, and the relevant period for purposes of this appeal is therefore the approximate ten-month period, from **February 24, 2011, through December 31, 2011**.

8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules (or "Grids") as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

9) Through the date last insured, considering Plaintiff's age, education, work experience, and RFC—and according to the testimony of the VE—there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including such light jobs as a garment sorter and garment folder, as well as a cashier, though the available number of cashier jobs (but not the garment jobs) would be reduced to allow for the sit/stand option set forth in Plaintiff's RFC (*see* tr. 52–53, 89–91).

10) As Plaintiff could have performed other available work, he was not under a disability, as defined in the Act, at any time between February 24, 2011, and December 31, 2011, the relevant period for purposes of this appeal (*see* n.2, *supra*) (or, as the ALJ noted, during the larger period of February 5, 2009 (alleged onset) through December 31, 2011 (*see* tr. 53)).

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen,

786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     ISSUES RAISED BY PLAINTIFF & RELEVANT EVIDENCE OF RECORD

A.      Issues

Plaintiff asserts two claims of error, both of which concern his request for review by the AC. Plaintiff first argues that he submitted new and material evidence to the AC which renders the ALJ's decision contrary to the weight of the evidence that is now of record and which was of record at the time the AC denied review, and thus that the AC erred in denying review (doc. 8 at 3–6).  Second, Plaintiff asserts that the AC erred by failing to show in its written denial that it had adequately evaluated the new evidence submitted by Plaintiff (id. at 4–5) (citing Flowers v. Comm'r. of Soc. Sec. Admin, 441 F. App'x 735, 745–47 (11th Cir. 2011)).

B.      Evidence Submitted to the AC

1.      Report of a General Medical Examination

On June 20, 2013, Plaintiff was examined by Donna Matthews, an Advanced Registered Nurse Practitioner ("ARNP"), upon referral by Judy Bryant of the Florida Department of Education, Division of Vocational Rehabilitation (tr. 19–20).  ARNP Matthews noted two abnormalities upon examination:  mild weakness in the right lower extremity (but a normal gait), and mild ptosis of the right upper eyelid (tr. 20).[3]  She assessed chronic low back pain with radiculopathy in the right lower extremity and mild diabetic neuropathy (id.).  Her only recommendation was that Plaintiff limit prolonged standing and sitting (id.).

Plaintiff also submitted a cover sheet to ARNP Matthews' report (tr. 19).  Although the cover sheet was signed by Ms. Bryant (who is identified as a "counselor") on June 20, 2013, there is a

---

[3] ARNP Matthews also made a notation regarding the "fundi" of Plaintiff's eye(s), but the notation is illegible (see tr. 20).  The court notes, however, that the notation is not made in the space/column provided for describing any abnormalities of the eye(s); in that column only the mild ptosis is noted (id.).  Moreover, ARNP Matthews did not diagnose any abnormalities of the eyes; nor did she assess any functional limitations related to the eyes (id.).  It thus appears—to the extent the illegible notation concerns an abnormality of the fundi—that the abnormality is inconsequential, as is the mild ptosis.  Nevertheless, even without the benefit of ARNP Matthews' report, the ALJ included in Plaintiff's RFC a restriction from work requiring good depth perception, fine vision, or driving.

section titled "Medical History (Physician's summary of major vocational disabilities)," which was completed on July 15, 2013 (*id.*).  It is unclear who completed the physician's summary, but in it the following handwritten notations appear: "Type 2 diabetes—with early peripheral neuropathy," hypertension, and "Lumbar degenerated disc ([history] of prior MRI—reports herniated disc—report not seen)" (*id.*).

### 2.    Report of a Psychological Evaluation

On July 11, 2013, Plaintiff was evaluated by J. Warren Toms, Ph.D., at Ms. Bryant's request (*see* tr. 21–30).  Dr. Toms' staff administered intelligence, personality, and achievement tests, and Dr. Toms interpreted the results (tr. 21).  Additionally, Dr. Toms and/or his staff extensively interviewed Plaintiff (*see* tr. 21–25 (a detailed summary of Plaintiff's statements)), though it does not appear that Dr. Toms or his staff reviewed any of Plaintiff's medical records.[4]  Dr. Toms assessed the following diagnoses: depressive disorder, not otherwise specified ("NOS"); "[a]nxiety disorder, NOS (performance anxiety)"; crack cocaine dependance, sustained, full remission; "[p]ersonality disorder, NOS (dependant features)"; and borderline intellectual functioning; as well as "[b]ad back" with secondary numbness and pain in the leg, vision problems, diabetes, obesity, and high blood pressure (tr. 29).  With respect to Plaintiff's physical impairments, Dr. Toms noted that Plaintiff would need "to be thoroughly evaluated from a medical standpoint" to determine his RFC (*id.*).  With respect to Plaintiff's mental impairments, Dr. Toms noted that they "should not prevent [Plaintiff] from working" (tr. 30).  Finally, Dr. Toms recommended that Plaintiff undergo a vocational evaluation (*id.*).

### 3.    Report of a Vocational Evaluation

On September 11, 2013, Mark Laufer, a Board Certified Disability Analyst, conducted a "Comprehensive Vocational Evaluation," again upon referral by Judy Bryant (*see* tr. 11–18).  In a report concerning the evaluation, dated September 18, 2013, Mr. Laufer states that the information and conclusions contained in the report are based upon his "in-depth interview" with Plaintiff on September 11, his vocational evaluation of Plaintiff on the same day, and "labor market research"

---

[4] Plaintiff had no history of mental health treatment or psychological treatment, and he had never taken any psychiatric medications (*see* doc. 23); thus, there were no psychological records available to review.

(tr. 11).  A review of the report, though, indicates that Mr. Laufer also reviewed Dr. Toms' report of July 11, 2013, as Mr. Laufer noted Dr. Toms' diagnoses, opinion that Plaintiff's "mental health issues should not prevent him from working," and recommendation that Plaintiff be "thoroughly evaluated" in order to determine his physical RFC (*id.*).  Nevertheless—that is, without the benefit of a physical evaluation as recommended by Dr. Toms—Mr. Laufer concluded that Plaintiff's functional limitations "may" include a restriction from lifting more than twenty pounds, as well as a restriction from prolonged standing, walking, climbing, working at heights, balancing, bending, stooping, crouching, crawling, and squatting (*id.*).  He also opined that Plaintiff "may" have difficulty driving at night (*id.*).  Additionally, after taking into account the foregoing restrictions, Mr. Laufer opined that Plaintiff would be capable of performing sedentary work and could work up to eight hours per day on a full-time basis (tr. 12).  Continuing, Mr. Laufer opined that Plaintiff, on his upcoming birthday (January 9, 2014), would be fifty years of age and then would be in the "closely approaching advanced age" category (*id.*).  He further opined that use of the Grids (20 C.F.R. Part 404, Subpart P, Appendix 2) would render Plaintiff disabled as of January 9, 2014 (tr. 12).  Mr. Laufer clarified that prior to Plaintiff's fiftieth birthday—as a "younger individual"—Plaintiff would not be disabled under the Grids (*id.*).  Mr. Laufer additionally stated, "Since [Plaintiff] is 113 days from his birthday, I would suggest that he file this report in January after he has had his birthday and has turned 50," as he currently "does not meet any of the rules under the 44–49 year old categories of 'Younger Individual' for a decision of disabled." (*id.*).  Mr. Laufer also noted, however, that Plaintiff appeared to be "vocationally disabled," due to having no transferable work skills or an ability to return to areas of past training and experience, in addition to having visual acuity problems and other physical and intellectual limitations (tr. 12–13).

V.    DISCUSSION

Generally, a claimant is allowed to present new evidence at each stage of the administrative review process "[s]ubject to the limitations [in 20 C.F.R. §§] 404.970(b) and 404.976(b)." 20 C.F.R. § 404.900(b); Ingram, 496 F.3d at 1261.  The Appeals Council has discretion not to review the ALJ's denial of benefits; however, if the claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC must consider such evidence where it relates to the period on or before the date of the ALJ's hearing decision.  20 C.F.R. § 404.970(b); *see also* Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

Additionally, when a claimant has properly presented new evidence to the AC, the AC must adequately evaluate the evidence rather than "perfunctorily adher[e]" to the ALJ's decision. Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980).[5]  Even so, the AC is "not required to provide a detailed rationale for denying review." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 784 (11th Cir. 2014).  Finally, when new evidence has been properly presented to the AC, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram, 496 F.3d at 1262; see also Caces v. Comm'r of Soc. Sec. Admin., 560 F. App'x 936, 941 (11th Cir. 2014) ("The district court must consider the new evidence submitted to the AC and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record.") (citing 20 C.F.R. § 404.970(b)).

Here, the AC considered Plaintiff's new evidence.  It then: (1) stated that it had considered the additional evidence, (2) made the new evidence part of the administrative record (see tr. 11–30), and (3) stated that it had determined that the new information did not provide a basis for changing the ALJ's decision (tr. 2).  That was as much detail as it was required to provide. See, e.g., Recla v. Comm'r of Soc. Sec. Admin., 594 F. App'x 592, 593 (11th Cir. 2015) (citing Mitchell, 771 F.3d at 784 and Ingram, 496 F.3d at 1259, 1262).[6]  Accordingly, Plaintiff is not entitled to relief on his claim that the AC erred by failing to explain the rationale for its decision.[7]

------

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[6] The undersigned cites Recla and other unpublished cases herein only as persuasive authority and recognizes that such opinions are not considered binding precedent. See U.S. Ct. of App. 11th Cir. Rule 36-2.

[7] As noted supra, in support of this claim Plaintiff relies upon Flowers, 441 F. App'x. at 746 (remanding in part because the AC did not articulate specific findings when considering new evidence).  Plaintiff's reliance upon this case, however, is misplaced. First, in Flowers, unlike here, the new evidence submitted to the AC included an RFC assessment "that was supported by significant clinical findings from three examinations performed" by a treating physician. Id., at 746.  Second, and perhaps more important, "[i]n a published case issued after [Flowers], the Eleventh Circuit held that the AC is 'not required to provide a detailed rationale for denying review,'" and "the Eleventh Circuit has [thus] rejected Plaintiff's contention to the contrary." English v. Colvin, No. 3:14cv7/MCR/EMT (N.D. Fla.) (doc. 11, Report and Recommendation (Jan. 20, 2015)) (citing Mitchell, 771 F.3d at 784).  The court notes that Plaintiff's counsel in the instant case also represented the plaintiff in English. Although Plaintiff's memorandum here (doc. 8) was filed on January 15, 2015, five days before the Report and Recommendation ("R & R") issued in English, Plaintiff's counsel should have alerted the court of her reliance upon Flowers in the instant case after she reviewed the R & R in English, by filing a supplemental memorandum or other notice with the court.  Thus, if counsel has relied upon Flowers to advance the same argument in any other pending case, it would be prudent for her to file a Notice of Supplemental Authority, seek leave of court to file an amended memorandum, or otherwise alert the court to the Mitchell decision in any such pending case.

Plaintiff's other claim for relief also fails.  Initially, it appears the AC could have properly declined to even accept or consider Plaintiff's new evidence, because the evidence relates to Plaintiff's condition in June, July, and September of 2013, which time frames are all after April 25, 2013, the date the ALJ issued his decision.  *See* 20 C.F.R. § 404.970(b); *see also* § 404.976(b) ("The [AC] will consider all the evidence in the [ALJ] hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the [ALJ] hearing decision.  If you submit evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the [AC] will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.").  The AC did accept and consider the evidence, however, but it correctly found that the evidence provided no basis for changing the ALJ's decision.  In summary, the evidence considered by the AC, in relevant part, is as follows.

(1)     ARNP Matthews—to the limited extent her opinion should be considered[8]—opined that Plaintiff should avoid prolonged standing and sitting.  The ALJ included such a restriction in Plaintiff's RFC (by limiting him to work that permitted a sit/stand option and required him to sit or stand for no more than four hours in a workday).  Thus, ARNP Matthews' opinion does not undermine or conflict with the ALJ's findings and conclusions.

(2)     Dr. Toms, a psychologist, opined that Plaintiff's mental impairments would not interfere with his ability to work, and he—understandably, in light of his credentials—did not opine that Plaintiff was precluded from work from a physical standpoint or impose any physical work-related limitations, though he did recommend that Plaintiff undergo a thorough physical evaluation. Stated simply, the evidence from Dr. Toms is not contrary to the evidence of record.

(3)     Mr. Laufer opined that Plaintiff was not disabled and should reapply for benefits when he turned fifty.  Though Mr. Laufer also opined that Plaintiff—prior to turning fifty—would be limited to sedentary work, he offered this opinion without reviewing any of Plaintiff's medical records or conducting a physical examination or considering the results of any such examination.

---

[8] Physician's assistants, and other non-physicians such as advanced registered nurse practitioners, are excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment.  20 C.F.R. § 404.1513(a).  They are considered "other sources," whose opinions may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d).

Moreover, Mr. Laufer's opinion—like those of ARNP Matthews and Dr. Toms—does not relate to the relevant period. Mr. Laufer evaluated Plaintiff and authored his report on in September 2013, which was more than four months after the ALJ issued his decision and more than twenty months after December 31, 2011, the date Plaintiff was last insured for DIB purposes. *See* Ingram, 496 F.3d at 1261 (evidence submitted to the AC must be "chronologically relevant" to the time period considered by the ALJ); *see also* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision.") (footnote omitted). Finally, Mr. Laufer is not an "acceptable medical source" and, even if he were, it is the ALJ's duty to evaluate the evidence and determine a claimant's RFC. *See* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources); 20 C.F.R. § 404.1527(d)(2) (noting that although the Commissioner "will consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner"). For all of these reasons it is clear that the evidence from Mr. Laufer provides no basis for changing the ALJ's decision.

In sum, nothing in the current record suggests that, with respect to the time period from February 24, 2011, through December 31, 2011, Plaintiff was functionally limited such that he could not perform work with the limitations set forth in the RFC determined by the ALJ.

VI.    CONCLUSION

For the reasons discussed herein, the undersigned finds without hesitation that the Commissioner's final decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F.3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 15th day of April, 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).